COMMONWEALTH *vs.* ANTONIO C. CAMERANO.

No. 96-P-420.

Worcester. January 7, 1997. - March 26, 1997.

Present: BROWN, KASS, & LAURENCE, JJ.

*Controlled Substances. Conspiracy.*

At the trial of a complaint for conspiracy to possess marihuana with intent
to distribute it, there was no evidence to permit the jury to find, beyond
a reasonable doubt, that the defendant had agreed with another, a ten-
ant on the defendant's land, to cultivate, cure, process and sell
marihuana: the defendant's motion for a required finding of not guilty
should have been allowed. [366-368] LAURENCE, J., dissenting.

COMPLAINT received and sworn to in the Clinton Division
of the District Court Department on September 14, 1993.

On appeal to the jury session of the Fitchburg Division the
case was tried before *Thomas F. Sullivan, Jr.,* J.

*Wendy B. Golenbock* for the defendant.

*Kennera M. McSherry,* Assistant District Attorney, for the
Commonwealth.

KASS, J. In order to convict Antonio Camerano, the defen-
dant, of conspiracy to possess marihuana with intent to dis-
tribute it (G. L. c. 94C, § 40), the Commonwealth was bound
to prove that Camerano had agreed with his tenant, Robert
Howell, to cultivate, cure, process, and sell marihuana. See
*Commonwealth* v. *Cook,* 10 Mass. App. Ct. 668, 671 (1980).
See also *Attorney Gen.* v. *Tufts,* 239 Mass. 458, 493 (1921);
*Commonwealth* v. *Nelson,* 370 Mass. 192, 196 (1976); *Com-
monwealth* v. *Pratt,* 407 Mass. 647, 653-654 (1990); *Com-
monwealth* v. *Nighelli,* 13 Mass. App. Ct. 590, 593-594 & n.3
(1982), which collect Massachusetts authorities and general
authorities.

After trial in the District Court, a jury of six returned a
verdict of guilty. Camerano has appealed on the ground that

it was error not to have granted his motion for a required finding of not guilty. We decide that the Commonwealth's evidence, viewed in the light most favorable to the prosecution, did not establish participation by the defendant in an agreement and combination to accomplish a criminal purpose. We state the facts that the jury could have found at the close of all the evidence, when the motion for a required finding of not guilty, initially made upon completion of the prosecution's case, was renewed by defense counsel. Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). See *Commonwealth* v. *Phinney*, 416 Mass. 364, 373-374 (1993); *Commonwealth* v. *Vaughn*, 23 Mass. App. Ct. 40, 42-45 (1986); Smith, Criminal Practice & Procedure § 1910 (2d ed. 1983 & Supp. 1996). We do not, of course, consider evidence contrary to that of the Commonwealth offered by the defendant, although we do consider evidence that the Commonwealth does not controvert and which fills in useful detail, namely how Camerano had met Howell and what monthly rent Camerano, as landlord, and Howell, as tenant, established. Cf. *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976).

On September 13, 1993, members of the middle district regional drug task force, the National Guard marihuana counter drug operation team, and State police engaged in fly-over surveillance by helicopter of Spencer and parts of West Boylston. After forty-five minutes in the air, they spotted a green-colored, roofless structure in which vegetation was growing. The structure was in a clearing at the end of a 200-foot unpaved driveway running off Redemption Rock Trail in Sterling. As soon as they returned to base, some of the officers applied themselves to the business of obtaining, and in due course obtained, a warrant to search the open structure, as well as a house, a house trailer, and a utility trailer that were in the clearing.

What the search party found was the residence of the defendant and his wife; some sixty feet behind it, the roofless structure that had attracted their interest; some one hundred feet behind that, a house trailer; and another one hundred feet behind the house trailer, a blue utility trailer. The Camerano property was in a pine woods. There were no neighbors within one hundred yards.

Such was the strength of the aroma wafting from the green structure that the search party officers, who had developed

educated noses for marihuana, sniffed it at a distance of sixty feet. Sylvia Camerano, the defendant's wife,[1] was home when the police arrived and denied knowledge of what was going on in the green enclosure. Also present when the police made their raid was Robert Howell, a tenant of the Cameranos. For $200 a month, Howell had arranged to rent land on which he pitched his house trailer and on which, some time after the initial rental arrangement, he built his garden enclosure. A plastic water line ran on the ground from an outside tap on the Cameranos' house to Howell's trailer. A curled up hose lay outside that trailer.

One member of the search party, Michael Tartini, a Spencer police officer, described Howell as sitting by his trailer, nursing a can of beer, when the police came on the scene. To Tartini's announcement that he had a search warrant, Howell responded, "Go ahead and search. I knew you were coming hours ago." The other government witness, Robert Burke, a police detective from the town of Clinton, testified that Howell emerged from his trailer as the search party moved in and that he was walking toward a white Cadillac when he, Burke, intercepted him. He described Howell as denying any knowledge of marihuana and saying, when told that the police had a search warrant, "[G]o ahead. You won't find nothing."

Howell's garden enclosure was not a conventional greenhouse. The structure was twenty-eight feet wide, thirty feet long, and about eighteen feet high. The sides were of plywood nailed on a frame of two-by-fours and two-by-sixes. As noted, the structure was open to the sky. It had no windows and its single door was padlocked. That padlock the police pried off. Inside, they found 107 marihuana plants, twelve to fifteen feet high. Howell later said the marihuana plants were his. Buried behind Howell's trailer, the police found five pounds of dried, cut, and packaged marihuana. In the trailer they found a food processor with marihuana residue, two scales, a box of gallon-sized zip-lock bags, and a small amount of cut and dried marihuana. The utility trailer belonged to Gary Pomerlow, a friend of Camerano, for whom Camerano occasionally repaired trucks. Camerano had allowed Pomerlow to store the utility trailer on the Camerano property. Pomerlow had introduced Camerano to Howell. In the utility trailer, the po-

---

[1]Sylvia Camerano was charged as a codefendant. The jury acquitted her.

lice found a suitcase stuffed with eight pounds of marihuana, cut, dried, and packaged in approximately one-pound bags.

The task force searched the Camerano house thoroughly and turned up no drugs or drug paraphernalia, no key to the padlock of the green structure, nor anything else connected to drug use or distribution.

Conspiracy seldom occurs in a fishbowl; rather, the conspirators take pains to act secretively. Direct evidence of a conspiracy, therefore, is rarely available and, typically, the government must rely on circumstantial evidence. *Iannelli* v. *United States*, 420 U.S. 770, 777 n.10 (1975). *Commonwealth* v. *Nelson*, 370 Mass. 192, 200-201 (1976). See *Commonwealth* v. *Pratt*, 407 Mass. 647, 654 (1990). The inferences that a jury may permissibly draw from the circumstantial evidence do not need to be inescapable; they need only be reasonable. *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989). "The acts of different persons who are shown to have known each other, or to have been in communication with each other, directed towards the accomplishment of the same object, especially if by the same means or in the same manner, may be satisfactory proof of a conspiracy." *Commonwealth* v. *Smith*, 163 Mass. 411, 418 (1895). *Commonwealth* v. *Pratt*, 407 Mass. at 653. *Commonwealth* v. *Anselmo*, 33 Mass. App. Ct. 602, 604 (1992).

No evidence, as we read it, permitted the jury to find, beyond a reasonable doubt, that Camerano had agreed with Howell to a marihuana growing and selling project. Nothing suggests that Camerano, when he rented to Howell, intended that Howell would raise marihuana or was aware of Howell's plans so to do. Howell built the growing enclosure after he had arranged to move his trailer onto the Cameranos' property for a rent of $200 per month. Intent is a requisite mental state for conspiracy, not mere knowledge or acquiescence. *Commonwealth* v. *Benesch*, 290 Mass. 125, 134-135 (1935). *Commonwealth* v. *Burke*, 20 Mass. App. Ct. 489, 507-508 (1985). *United States* v. *Mankani*, 738 F.2d 538, 547 & n.1 (2d Cir. 1984). See *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 249-250 (1971), cert. denied, 407 U.S. 914 (1972) ("the need for concerted action or active participation requires actual commitment to the conspiratorial plan, [although] . . . it is not necessary that one play an active role in the actual execution of the object of the conspiracy"). In the *Mankani*

case, Sally Edith, one of several defendants, had rented a house on grounds on which a barn was also located. Other defendants used the barn as a repository for steel cylinders in which two tons of hashish had been smuggled into the country from Bombay, India. Removing the hashish from the steel cylinders was not a quiet process, but the court held that, despite the formidable likelihood that Edith might have been aware of what was going on in the barn, there was no evidence she was a party to a conspiracy. *Id.* at 547-548.

Here, the prosecution is quite right in pointing out that the jurors need not have believed Camerano when he testified that he did not know what marihuana smelled like and thought Howell was growing tomatoes and flowers in the enclosure. Disbelief, however, does not prove the contrary proposition, that Camerano *did* know Howell was growing marihuana. *Commonwealth* v. *Michaud*, 389 Mass. 491, 498 (1983). *Commonwealth* v. *Mitchell*, 38 Mass. App. Ct. 184, 190-191 (1995). The jury were entitled to infer that the very nature of the locked structure announced to Camerano that something unlawful was going on inside it. That leaves the government with having proved no more than awareness that Howell was growing contraband, not having proved beyond a reasonable doubt an agreement to further that undertaking. *United States* v. *Mankini, supra.* As in *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 566 (1980), independent evidence of an agreement is lacking, and there is only evidence of presence and, it may be inferred, awareness. There is no evidence that $200 per month was an untoward rent for parking a trailer, nor that Howell had used water in an amount that was unusual and had reflected itself in a higher than normal water bill received by Camerano. No key to the enclosure was found on Camerano's person or in his house, which the police had searched thoroughly. Nothing in the evidence suggested that Camerano used marihuana or would in some other manner share in the success, such as it might be, of Howell's operation. Even Camerano's presence was limited; he was away each working day at his job as a security guard. Awareness may translate to acquiescence but not to "affirmative acquiescence." See *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. at 250.

As to certain activities, the Legislature has enacted statutes that make it a crime to have knowledge of criminal conduct

and to suffer that conduct to continue. So, for example, the owner of a place who knowingly suffers a person to be upon the premises for the purpose of prostitution has committed a felony. G. L. c. 272, § 6. It is a misdemeanor to be "knowingly present at a place where heroin is kept or deposited" unlawfully. G. L. c. 94C, § 35, as inserted by St. 1971, c. 107, § 1. Mere presence where other drugs are present is not a crime. *Commonwealth* v. *Deagle,* 10 Mass. App. Ct. at 566. An owner of a building who knows that gaming is going on in it is not criminally responsible but has civil liability to a person who has suffered losses. G. L. c. 137, § 2. No statute makes criminal knowing presence where marihuana is grown or awareness that it is being grown, processed, stored, or sold. An agreement to participate in the illicit enterprise might be inferred from evidence such as conversations, writings, unusual rent, unusual water consumption, activity suggesting concurrence with the enterprise, or possession or constructive possession of the contraband. No evidence of that sort is present and the motion for a required finding of not guilty should have been allowed.

On the view a majority of the panel takes of the case, it is not necessary to consider the defendant's claim of error in the trial judge's instructions to the jury on the elements of conspiracy. Parenthetically, we have reviewed those instructions, and they are fundamentally correct.

The judgment is reversed, the verdict is set aside, and a finding of not guilty shall be entered on behalf of the defendant.

*So ordered.*

LAURENCE, J. (dissenting). Camerano's motions for a required finding of not guilty were properly denied. Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found, beyond a reasonable doubt, the essential element of unlawful, though tacit, agreement or combination on Camerano's part. The majority appears to concede that a jury could find from the circumstances proved by the Commonwealth — especially the bizarrely and suspiciously constructed and padlocked "garden enclosure"

and the pungent, hovering aroma of the growing marihuana — that Camerano, a trained security guard, was unmistakably aware of Howell's cultivation of an illegal marihuana crop a few feet from his house.

The Commonwealth's proof, however, went beyond the mere demonstration of Camerano's knowledge of the illegal activity and continued association with its perpetrator. The evidence was sufficient to allow the jury, informed by their common sense and life experience, to infer Camerano's eventual willing participation in Howell's criminal enterprise from his conduct, most particularly the facts that (1) Camerano continued to permit Howell to cultivate and presumably harvest the illicit crop despite his power to evict Howell, who appears at most to have been a tenant at will, if not a mere licensee; (2) Camerano continued to allow Howell to use his water, the only available supply, which Camerano either knew or had to have known was being used to grow the contents of the "enclosure"; and (3) Camerano continued willingly to accept monthly rental money from Howell who, on this record, had no other source of income than from his acknowledged drug activities.

These facts entitled the jury rationally to conclude that Camerano did not just manifest acquiescent consent to the continuation of Howell's illegal business, but in fact facilitated the business's operations. It is irrelevant that Camerano may not have had complete knowledge of the scope and details of those operations. *Attorney Gen.* v. *Tufts,* 239 Mass. 458, 493 (1921). Against this background, the majority has overlooked the teachings of our seminal conspiracy case, *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 249-250 (1971), cert. denied, 407 U.S. 914 (1972), as to proving conspiratorial combination or agreement:

> "Although the need for concerted action or active participation requires actual commitment to the conspiratorial plan, . . . it is not necessary that one play an active role in the actual execution of the object of the conspiracy. The language in [an earlier] case . . . that one 'must do something in furtherance of [the conspiracy]' we construe to mean simply that one must be shown to have at least communicated to other conspirators his willingness to join in the conspiracy. The very fact that

one gives his affirmative acquiescence to the object of a conspiracy may in many cases be doing 'something in furtherance of it.' *A particular defendant's participation in a conspiracy may be proved where his approval of the plan stimulates the activities of others to carry out the conspiracy, even though his participation does not involve an overt act . . . . In this context, the line that separates mere knowledge of the fact that a conspiracy exists from participation in the conspiracy is often vague and uncertain. It is within the province of the jury to determine from the evidence whether a particular defendant had crossed that line.*" (Emphasis supplied.)

Under those guidelines, the judge properly denied Camerano's motion for a required finding at the close of the Commonwealth's case, because the evidence permitted the jury to find from Camerano's conduct that he had gone from passive onlooker to conspiratorial, if unspoken, participant. Compare *Commonwealth* v. *Nelson*, 370 Mass. 192, 195-197 (1976); *Commonwealth* v. *Anselmo*, 33 Mass. App. Ct. 602, 605-608 (1992); *Commonwealth* v. *Wilson*, 38 Mass. App. Ct. 680, 686-687, (1995), and cases cited. Nor did the Commonwealth's evidence deteriorate after the defense presented its case. As the majority recognizes, the merely contradictory evidence as to what Camerano knew or did or could smell was insufficient to keep the issue from the jury to resolve, on all the evidence, whatever conflicts were presented. See *Commonwealth* v. *Gilbert*, 423 Mass. 863, 870 n.3 (1996). If anything, the inculpatory case was strengthened by Camerano's credibility-straining testimony that he thought Howell was growing only tomatoes and flowers in the perpetually padlocked, windowless, looming eighteen-foot high structure that bore no resemblance to a conventional greenhouse.

Because I conclude that the case was properly submitted to the jury and I agree with the majority that the challenged instructions were essentially correct, I would affirm the judgment.[1]

---

[1]The additional element of intent to distribute could properly have been inferred from the fact that some thirty-nine pounds of marihuana were confiscated on Camerano's property, an amount inconsistent with personal use. See *Commonwealth* v. *Nissenbaum*, 404 Mass. 575, 585 (1989) (Wilkins, J., concurring); *Commonwealth* v. *Houghtlin*, 16 Mass. App. Ct. 691, 687 (1983).