NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-361

COMMONWEALTH

vs.

MELISSA G. BORLAND.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of assault and battery by means of a dangerous weapon and assault and battery.[1]  On appeal, the defendant claims that the judge erred by (1) determining at the close of the Commonwealth's case that the evidence did not warrant an instruction on self-defense, and (2) denying the defendant's motions for required findings of not guilty.  The defendant also claims that her trial attorney rendered ineffective assistance by calling her as a witness knowing she made prior inconsistent statements and was not competent.  We affirm.

Background.  In summarizing the evidence at trial, we start by noting what was undisputed.  The defendant and victim were

_____

[1] The jury returned verdicts of not guilty of kidnapping and witness intimidation.

neighbors at the time of the incident.  On the morning of October 3, 2018, the defendant entered the victim's apartment and asked the victim to make a phone call for her.  Shortly thereafter, the defendant struck the victim, who was unarmed, in the head with a hammer.  The main issue at trial was whether the defendant's conduct was a justified exercise of self-defense.

1.  The Commonwealth's case.  The victim testified that, not long after entering inside his apartment, the defendant -- "all of a sudden," "without warning," and with "[n]o provocation at all" -- grabbed him by the hair and hit him in the head three times with a hammer.[2]  The victim stood up, knocked the hammer out of the defendant's hand, and attempted to call 911.  However, the defendant "grabbed [him] by the wrist" and "pull[ed] [him] onto the bed."  The victim testified that he eventually wrestled away from the defendant and tried to flee the apartment, but she prevented him from leaving by blocking the door.  After struggling with the defendant for approximately twenty minutes, the victim managed to call 911; multiple police officers responded to the scene.

Officer Licinio DePina testified that he saw the victim being treated by emergency medical service providers, "bleeding from the head and covered in blood."  DePina spoke to the

---

[2] The ball peen hammer was an antique owned by the victim.

2

victim, who claimed he did not know why the defendant had hit him in the head with the hammer. The victim was transported to the hospital, where he was treated for a "severe head injury." Another responding officer, Officer Kenneth Egan, encountered the defendant in the victim's apartment. Egan observed that the defendant was not wearing pants, and that she had scratches and bloodstains on her forearms. The defendant told Egan she had had an "encounter with a neighbor" and that "he was bleeding pretty badly." The defendant also inquired whether the victim "was okay." The defendant claimed she was at the victim's apartment to discuss a local food pantry and look at plants. The defendant neither reported to the officers any injuries of her own nor claimed that she had acted in self-defense.

At the close of the Commonwealth's case, defense counsel inquired with the judge whether the evidence warranted a self-defense instruction. The defendant's self-defense claim was based largely on the officers' testimony about the defendant's appearance at the scene, that the victim was significantly larger in stature than the defendant, and the victim's testimony concerning statements the defendant made during their violent encounter. Specifically, the victim testified that he had written a letter to the district attorney's office in which he reported the defendant yelled he was trying to rape her after she pulled him onto the bed. The victim also testified that he

3

told an officer who interviewed him one month after the incident that the defendant had said he was attacking her. The judge decided that the evidence did not yet warrant a self-defense instruction at that stage of the trial.

2. The defendant's case. At the close of the Commonwealth's case, the judge denied the defendant's motion for required findings of not guilty. After the court took a recess as requested by defense counsel so that he could consult with his client, counsel called the defendant to testify. The defendant, as the sole witness in her defense, claimed she was acting in self-defense when she struck the victim in the head with the hammer as he was on top of her attempting to rape her.

Discussion. 1. Sufficiency of the evidence. The defendant first claims that the convictions cannot stand because the Commonwealth failed to rebut the evidence before the jury at the close of the Commonwealth's case that the defendant had acted in self-defense. She also contends that the evidence in general was insufficient to support the convictions. We disagree.

We review the evidence in the light most favorable to the Commonwealth, to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).

4

The evidence, which included the victim's testimony that the defendant, unprovoked, attacked the victim in his own home, striking him three times in the head with a hammer and causing injuries, was sufficient to establish the elements of assault by means of a dangerous weapon beyond a reasonable doubt. See Commonwealth v. Leonard, 90 Mass. App. Ct. 187, 190 (2016) ("violation of G. L. c. 265, § 15A, requires proof of three elements: [1] the presence of all the elements of assault, and [2] a touching, however slight, [3] by means of a dangerous weapon"). We disagree with the defendant's contention that there was insufficient evidence that "she used an inherently dangerous weapon or another object with the intent to cause or knowledge that it would cause [the victim] harm." Considering the victim's testimony, the photographs of his injuries, the admission of the hammer into evidence, and the supporting medical records, a rational jury could find the defendant used the hammer as a dangerous weapon. See Commonwealth v. Gebo, 489 Mass. 757, 773-774 (2022) (even "innocuous object[s]" and "household items," such as plastic chair swung at victim, can be dangerous weapons). See also Commonwealth v. Appleby, 380 Mass. 296, 307 n.5 (1980) ("the question whether a weapon is dangerous as used is always one for the fact finder").

In addition, the evidence that the defendant grabbed the victim and pulled him down was sufficient to satisfy the

5

essential elements of assault and battery.  See Commonwealth v. Garvey, 99 Mass. App. Ct. 139, 145 (2021) ("To support a conviction of intentional assault and battery, the Commonwealth must prove that the defendant committed an intentional and unjustified use of force upon the person of another, however slight" [quotation omitted]).

Finally, the evidence as to the unprovoked, aggressive nature and force of the attack was sufficient to demonstrate the defendant did not act in self-defense.[3]  See Commonwealth v. Harrington, 379 Mass. 446, 452-454 (1980).  See also Commonwealth v. Kapaia, 490 Mass. 787, 793 (2022) ("the defendant's claim that certain witnesses were unreliable or that the testimony from some witnesses was inconsistent with the testimony from others and therefore insufficient to sustain a conviction is nothing more than an issue of credibility, an issue that is solely within the province of the jury" [quotation omitted]).  Accordingly, there was no error in the denial of the motion for a required finding of not guilty.

2.  <u>Self-defense instruction</u>.  At the outset, we note that the judge did in fact give a self-defense jury instruction in her final charge to the jury.  The issue before us is whether,

---

[3] The self-defense aspect of the sufficiency analysis overlaps, of course, with the issue of whether the judge erred by finding the evidence did not warrant a self-defense instruction, as discussed in more detail below.

6

at the close of the Commonwealth's case, the evidence warranted such an instruction.  Because the objection was preserved, we review for prejudicial error.  Commonwealth v. Teixeira, 486 Mass. 617, 622 (2021).

"Before the defendant is entitled to an instruction on the right to use deadly force in self-defense, the evidence must raise a reasonable doubt as to the defendant's right to use such force."  Commonwealth v. Toon, 55 Mass. App. Ct. 642, 644 (2002), citing Commonwealth v. Rodriguez, 370 Mass. 684, 687-688 (1976).  "[W]e consider the evidence, from any source, and resolve all reasonable inferences in favor of the defendant, without balanc[ing] the testimony of the witnesses for each side or consider[ing] the credibility of the evidence" (quotations and citation omitted).  Commonwealth v. Miranda, 484 Mass. 799, 810, cert. denied, 141 S. Ct. 683 (2020).  "However, a judge is not required to charge on self-defense . . . where a jury would be left to speculate on a hypothesis not supported by the evidence."  Commonwealth v. Paton, 31 Mass. App. Ct. 460, 464 (1991).  See Commonwealth v. Garcia, 482 Mass. 408, 411 (2019).  "When reviewing the denial of an instruction on the use of deadly force in self-defense, [we] ask[] whether, in the light most favorable to the defendant, the evidence raised at least a reasonable doubt that the defendant (a) believed . . . she was in imminent danger of death or serious bodily harm from which

7

the defendant could save . . . herself only by using deadly force, and (b) used all reasonable means available to retreat from the conflict."[4]  Teixeira, 486 Mass. at 622-623.  "Failure to raise a reasonable doubt as to [any] of these predicates is fatal to a claim of self-defense."  Toon, supra at 650.

Here, there was nothing in the evidence at the close of the Commonwealth's case to suggest that, prior to hitting the victim with the hammer, the defendant had attempted either to retreat or had no reasonable means of escape from a conflict with the victim who posed imminent danger of serious physical harm to her.  "[S]ome evidence" of these things was required "[b]efore that question may go to the jury."  Commonwealth v. Pike, 428 Mass. 393, 399 (1998).  See Commonwealth v. Benoit, 452 Mass. 212, 226 (2008) ("privilege to use self-defense arises only in circumstances in which the defendant uses all proper means to avoid physical combat").  As the evidence stood at the close of the Commonwealth's case, the acts against which the defendant claimed to be defending herself occurred after she struck the victim in the head with the hammer.  The victim expressly

_____

[4] As the judge implicitly found and eventually instructed, the standard for self-defense by deadly force applied, even though death did not result.  See Commonwealth v. Pike, 428 Mass. 393, 396 & n.3 (1998) (deadly force instruction proper where defendant threw radio at victim because "[t]he relevant inquiry is what level of force was used, not what the resulting injuries were").

8

testified that "[the defendant] hit [him] first" in response to defense counsel's question that "at some point, [he was] on top of her?" Any contrary conclusion as to the sequence of events would be grounded in mere speculation. See Commonwealth v. Naylor, 407 Mass. 333, 335 (1990), quoting Commonwealth v. Costa, 360 Mass. 177, 184 (1971) ("A trial judge is not required . . . to charge on an hypothesis which is not supported by the evidence"). See also Commonwealth v. Camerano, 42 Mass. App. Ct. 363, 367 (1997) (disbelief of witness's testimony does not prove contrary proposition). There was no suggestion during the victim's testimony that the defendant availed herself of any means of retreat, for instance, by attempting to leave the apartment, prior to hitting the victim. Nor did the officers testify that the defendant made statements to that effect. Thus, there was insufficient evidence to support the required inference for a self-defense instruction. See Toon, 55 Mass. App. Ct. at 651.

Moreover, since the only evidence of the sequence of events established that the defendant was the first aggressor, self-defense was not available. See Commonwealth v. Castillo, 485 Mass. 852, 856-857 (2020) ("A person who initiates a fight cannot generally claim self-defense"); Commonwealth v. Espada, 450 Mass. 687, 694 (2008). See also Miranda, 484 Mass. at 813 (defendant's "combined failure to retreat and unnecessary

9

escalation of conflict necessarily preclude[d] a finding of self-defense").  Thus, the judge did not erroneously decline at the close of the Commonwealth's case to instruct on self-defense.[5]

3.  Ineffective assistance of counsel.  The defendant claims trial counsel's tactical decision to call the defendant to testify, see Commonwealth v. Grissett, 66 Mass. App. Ct. 454, 459 (2006), was manifestly unreasonable when made and deprived her of an otherwise available, substantial ground of defense. See Commonwealth v. Housen, 458 Mass. 702, 711 (2011); Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  When a claim of ineffective assistance of counsel is raised for the first time on direct appeal, we will only grant relief when that ineffectiveness appears "indisputably" on the trial record. Commonwealth v. Zinser, 446 Mass. 807, 811 (2006) (quotation omitted).  "Relief on a claim of ineffective assistance based on the trial record [without the support of affidavits] is the weakest form of such a claim because it is bereft of any

_____

[5] Concluding, as we do, that there was no error, we need and do not address the defendant's claim that the judge's decision was prejudicial insofar as it effectively forced her to testify. Nonetheless, we note that a defendant's "need to testify or present evidence in order to raise self-defense does not violate State or Federal constitutional privileges against self-incrimination. . . .  For the Federal and State privileges against self-incrimination to attach, the State must compel the defendant to produce testimonial evidence."  Toon, 55 Mass. App. Ct. at 651 n.12 (and cases cited).

10

explanation by trial counsel for [their] actions and [is] suggestive of strategy contrived by a defendant viewing the case with hindsight" (quotation omitted).  Commonwealth v. Davis, 481 Mass. 210, 222 (2019).

The defendant fails to show trial counsel's judgment relating to his decision to call the defendant to testify was "manifestly unreasonable" when made.  See Commonwealth v. Henley, 488 Mass. 95, 134 (2021) (under Saferian test, "[a] strategic or tactical decision by counsel will not be considered ineffective assistance unless the decision was manifestly unreasonable when made" [quotation omitted]).  The Commonwealth's case largely rested on the credibility of the victim.  After the judge concluded that self-defense was not raised during the Commonwealth's case, it is unclear how defense counsel could have raised the defense and challenged the victim's credibility without calling the defendant to testify. See Commonwealth v. Sharpe, 454 Mass. 135, 147 (2009) (not manifestly unreasonable to call defendant to testify where it was "only realistic chance" of obtaining lesser verdict). Commonwealth v. Lally, 473 Mass. 693 (2016), on which the defendant relies, is inapposite.  The decision in that case was based on a review of defense counsel's testimony at a hearing on a motion for new trial -- "[t]he preferred method for raising claims of ineffective assistance of trial counsel," Davis, 481

11

Mass. at 222 -- which allowed the reviewing court to conclude the defendant's decision to testify was voluntary and informed. Lally, supra at 713-714. We have no such evidence here. Without an affidavit from either defense counsel or the defendant herself, we simply have no way of knowing, for instance, what prior conversations they had about the defendant's choice to testify; the defendant's reasons for testifying; any information as to the mental health issues the defendant now claims impacted the validity of her decision to testify; or even if the defendant perhaps decided to testify against defense counsel's advice. See Commonwealth v. Kelly, 57 Mass. App. Ct. 201, 209 (2003), quoting Strickland v. Washington, 466 U.S. 668, 688-691 (1984) ("Inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's . . . decisions").

As to the defendant's claims that defense counsel should have requested more time to consult with his client or asked for the judge to conduct a voir dire into the defendant's decision, there is no reason on this record to think these were not strategic decisions on the part of defense counsel. See Commonwealth v. Glacken, 451 Mass. 163, 170 (2008) ("Because of the delicate balance between a defendant's right to testify on his own behalf and his equally fundamental right not to testify . . . [s]uch a colloquy might give the defendant the impression

that he was being urged by the judge to testify" [quotation omitted]).  Accordingly, the defendant has not shown that trial counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer," or that counsel's decision likely "deprived the defendant of an otherwise available, substantial ground of defence."  Saferian, 366 Mass. at 96.

Judgments affirmed.

By the Court (Neyman, Desmond & Smyth, JJ.[6]),

*Joseph F. Stanton*

Clerk

Entered:  September 8, 2023.

---

[6] The panelists are listed in order of seniority.