COMMONWEALTH *vs.* DUKE WILSON
(and two companion cases[1]).

No. 93-P-1457.

Essex. March 20, 1995. - July 3, 1995.

Present: KASS, SMITH, & GILLERMAN, JJ.

*Search and Seizure*, Glassine bag. *Witness*, Police officer. *Evidence*, Identification of inanimate object, Absence of witness, Inference. *Practice, Criminal*, Argument by prosecutor, Instructions to jury, Required finding. *Controlled Substances*.

At the trial of indictments for violations of the controlled substances laws in which the cocaine seized by police had been suppressed as evidence, testimony of a police officer that, in his opinion and based on his training, a certain plastic food storage bag in the defendants' possession had contained cocaine was properly admitted in evidence, where the officer's observation had occurred before the unlawful search and seizure. [682-683]

At a criminal trial, a remark of the prosecutor in closing argument was a reasonable inference from the evidence and was not improper. [683-684]

At the trial of indictments for violations of the controlled substances laws, there were no errors in the judge's instructions with respect to credibility of the sole witness or with respect to the jurors' not drawing any inference from the failure of a certain witness to be called to testify. [684-686]

Evidence at the trial of a conspiracy indictment was sufficient to warrant the jury's finding the defendant guilty beyond a reasonable doubt. [686-687]

Any differences between a police officer's testimony at a hearing on a motion to suppress evidence and his testimony at the subsequent trial were not at fundamental variance so as to place in question the integrity of the prosecution of the case. [687]

INDICTMENTS found and returned in the Superior Court Department on May 30, 1990.

---

[1]Commonwealth *vs.* Eugene Anderson and Commonwealth *vs.* Robert Anderson.

The cases were tried before  *John L. Murphy, Jr.,* J.

*Charles W. Rankin* for Duke Wilson.

*Djuna E. Perkins,* Assistant Attorney General, for the Commonwealth.

*John D. Hodges, Jr.,* for Eugene Anderson, submitted a brief.

*Scott P. Curtis,* for Robert Anderson, submitted a brief.

KASS, J. All three defendants were convicted by a jury of conspiracy to distribute, or possess with the intent to distribute, cocaine in an amount more than 100 grams.[2] A claim of error common to the appeal of each of the defendants is that the government's sole witness, a State trooper, was improperly permitted to give his opinion that the white substance he had observed in a "glassine type household food storage bag" was cocaine, the cocaine itself having been seized by the police but later suppressed.[3] There are five other points that are particular to the appeal of Wilson. We affirm the convictions.

Here is the factual setting for the appeals, based on what the jury could have found, taking the evidence in a light most favorable to the Commonwealth. Trooper Dennis Brooks, accompanied by a confidential informant, went to a basement apartment at 18 Union Street, Lynn, to make an undercover "buy" of cocaine. Inside that apartment, negotiations led to an offer by Greg Wigfall to sell 250 grams for $9,500. Trooper Brooks countered with a price of $9,000, a figure that Wigfall accepted after checking "upstairs" with his cousin. Each party to the transaction now needed some time: Wigfall to get the cocaine from a place other than the apartment; Brooks to get the money. During the next three and a half hours, Brooks organized not only funds, but surveillance and support teams of police officers.

---

[2] The appeal of a fourth defendant, Greg Wigfall, was dismissed for want of prosecution under our Standing Order Concerning Dismissal of Appeals and Reports In All Cases For Lack of Prosecution (1982).

[3] As to that suppression, see *Commonwealth* v. *Wigfall,* 32 Mass. App. Ct. 582 (1992).

At 4 P.M. Brooks returned to the apartment where he met not only Wigfall, but Wigfall's cousin, Robert Anderson, and Duke Wilson. They were drinking beers and Brooks smelled food. Brooks said, "You guys finish eating before you do anything. I just ate myself." Anderson replied, "That's not food. That's the product." Thereupon Wilson lifted up a brown paper bag and said, "This ain't food. This is the product." Wilson removed from the brown bag a white styrofoam container and opened it. At that point Eugene Anderson entered the room from behind a curtain and asked pointed questions about who Brooks was and whether he was "all right." Wigfall vouchsafed that Brooks was "okay." Duke Wilson handed Brooks a glassine bag from the styrofoam container. It was a transparent ziplock baggie, about six inches by four inches. In the opinion of Brooks, based on his training, the bag contained cocaine. The sting, i.e., the payment and delivery, occurred at about 4:20 P.M., with immediate arrests of the defendants and seizure of the cocaine inside the apartment. The defendants succeeded in suppressing the seized contraband on the ground that the police had three plus hours to obtain search and arrest warrants and could not convincingly claim exigency to justify their warrantless entry and arrest. See *Commonwealth* v. *Wigfall*, 32 Mass. App. Ct. 582 (1992).

1. *Propriety of the admission of the testimony of Trooper Brooks that the bag he saw contained cocaine.* It is the position of the defendants that Trooper Brooks was allowed to make an unlawful end run around the suppression of the cocaine. His description, they urge, is fruit of an illegal search. See *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385, 392 (1920); *Nardone* v. *United States*, 308 U.S. 338, 341 (1939); *Wong Sun* v. *United States*, 371 U.S. 471, 484-486 (1963); *United States* v. *Crews*, 445 U.S. 463, 470 (1980). The difficulty for the defendants is that Trooper Brooks testified to observations he made before the unlawful search. The evidentiary tree, if we may belabor the trusty old metaphor, had not yet been poisoned. It is not correct to say, as the defendants do, that the suppression of the drugs as evidence

was effectively nullified. What the trooper said he saw is not evidence as powerful as sending to the jury room a chunk of cocaine which they can see and feel and has been tested. Among examples of the admission of personal knowledge of a witness independent of suppressed evidence are: *United States* v. *Crews*, 445 U.S. at 472-473 (admission of in-court identification by a witness whose prior photographic and lineup identifications had been suppressed); *Commonwealth* v. *Jarabek*, 384 Mass. 293, 299 (1981) (live testimony about meetings involving a bribe admitted, although clandestinely recorded conversations were suppressed); *Commonwealth* v. *Blood*, 400 Mass. 61, 77-78 (1987) (same, wiretapped recordings); *Commonwealth* v. *Collazo*, 34 Mass. App. Ct. 79, 81 n.2 (1993) (same, i.e., electronic interceptions suppressed, live testimony received).

2. *Claim of improper closing argument by prosecutor.* During the course of his closing argument, Wilson's lawyer urged upon the jury that Wilson's only crime was presence in the apartment where the drug deal was conducted and that, of course, was no crime at all. In pursuing that theme, Wilson's counsel needed to confront and explain away the testimony of Trooper Brooks that Wilson had repeated what Robert Anderson had said, "That's not food. That's the product." Counsel did so by suggesting the repetition was implausible. "He's parroting what someone else is saying. I would suggest to you that's not even believable."

In response, the prosecutor in her closing argued as follows:

> "And Duke Wilson is sitting next to Robert Anderson. He's no where else in the apartment. He isn't glued to the television. He's sitting next to Robert Anderson with Trooper Brooks when Brooks says, eat your food, I've already eaten, and they say, Robert Anderson first, that's not food, that's the product. Wilson then says, that's not food, it's the product, and he takes it out and he shows it in his hands to Trooper Brooks. And you've got to ask yourselves, ladies and gentlemen, what is his role on that day, is he there for protection? They've got-

> ten ripped off once in December. Is he there to guard
> this ten thousand dollars worth of cocaine . . . on that
> day or is he not? Does he look like a parrot to you,
> ladies and gentlemen, or does he look like a guard?"

To the argument that Wilson was present as a guard, there
was vociferous objection. The question is whether the infer-
ence the prosecutor suggested was a fair one. See *Common-
wealth* v. *Kozec*, 399 Mass. 514, 522 (1987) ("Arguments
that are unsupported by the evidence and thus are specula-
tive and conjectural are, of course, improper"). Brooks, the
sole source of evidence about the encounter in the apartment
with Wigfall, the Andersons, and Wilson, had not testified in
terms that Wilson was performing guard duty, but he had
described Wilson as larger than the others. While Wilson
had handled the cocaine and exhibited it to Brooks, Wilson
had not engaged in negotiation or made decisions about the
drug deal, as the others had. Those facts were a basis for a
reasonable hypothesis that Wilson had some collateral part
in the transaction. There was evidence that Wigfall and the
Andersons were concerned for their security and that of their
stash — they had suffered a theft of cash or drugs some five
months earlier. On the accumulated evidence, it was a rea-
sonable inference, rather than a speculative one, that Wil-
son's function among the drug sellers was to provide protec-
tion for persons and property. The prosecutor's remark was
not improper.

   3. *Claim of error in jury instructions.* This was a one wit-
ness case and there were no exhibits. In that setting, it was
not error for the judge to instruct the jury that, "Your main
function in this case, as pointed out by counsel, is to judge
the credibility of the single witness who testified before you."
Wilson's counsel suggests that by so saying the judge fore-
closed consideration by the jury that Wilson was present at
the scene but had no connection to the drug deal. To arrive
at that conclusion requires ripping the quoted sentence out of
its context in the charge. That context was as a prelude to a
more general disquisition on the methods by which jurors
might assess the credibility of the witness. There followed an

analysis of the elements of the crime of conspiracy to distribute drugs, with instruction that in order to convict, the jury must find the government had proved those elements beyond a reasonable doubt. The jury could not have been misled by the single sentence to which the defendant calls attention (as to which there was no objection). Contrast *Commonwealth* v. *Cordle*, 404 Mass. 733, 743 (1989).

During the charge conference, counsel for Wigfall raised the subject of neither defense nor prosecution having called as a witness the informant who had accompanied Trooper Brooks during the first contact with Wigfall and asked for an instruction that no inference was to be drawn from that. That same counsel, in his summation, asked the jury to ponder why the government had not called as witnesses the informer and the other police officers who participated in the case. The judge instructed as follows:

> "The comment was made by counsel about witnesses [who] could have been [called] in and where were they and so forth. All witnesses are available to all parties, so anybody can bring into this court any witness they wish to bring in. The defendant is not required to bring in any witnesses. But there was conversation about Miss Blue. She's entitled to come in here, the defendants could have her in here, and I ask you not to give that great weight."

Counsel for Wigfall and Robert Anderson objected. On appeal, Wilson takes up the cudgel, protesting that the instruction as given shifted the defendants' burden of proof and undermined the presumption of innocence.

When a witness is equally available to all parties, no inference may generally be drawn from the failure to call the witness. *Commonwealth* v. *O'Rourke*, 311 Mass. 213, 222 (1942). *Commonwealth* v. *Fulgham*, 23 Mass. App. Ct. 422, 425 (1987). Should a party have "knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony *of distinct importance to the case,*

686          38 Mass. App. Ct. 680

Commonwealth *v.* Wilson.

the party would naturally offer that person as a witness. If, then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that that person, had he been called, would have given testimony unfavorable" to that party and favorable to the other side. (Emphasis supplied.) *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986). There is no basis for such an inference, however, if "the testimony would be unimportant — merely corroborative of, or merely cumulative upon, the testimony of one or more witnesses who have been called." *Ibid.*

Testimony from either the informer or other officers would have been in the latter — unimportant — category. The informer was not present in the second meeting, when the transaction took place, and when the three defendants who are appealing were present. As to the other officers, they were not inside the apartment. Sergeant Quigley, who commanded the backup team, was in touch via a concealed "wire" on Brooks but Brooks had testified that the transmission was imperfect and that much of the conversation inside had not been received by Quigley. In the absence of a case in which the importance of the missing testimony is self-evident, the judge was right not to invite any special inference and right in warning the jury against drawing any inference from the absence of a witness. *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. at 134-135.

4. *Required finding of not guilty.* Wilson argues that the evidence does not get beyond presence and fails of proving "formation of an agreement and a combination to commit, or cause to be committed, a crime or an unlawful act." *Commonwealth* v. *Nighelli*, 13 Mass. App. Ct. 590, 594 (1982). To show the unlawful agreement, the prosecution need not show an overt act in furtherance of the unlawful objective, *Commonwealth* v. *Cantres*, 405 Mass. 238, 244 (1989); it may rely on circumstantial evidence. *Commonwealth* v. *Pratt*, 407 Mass. 647, 653 (1990). Knowledge of the agreement or combination to commit a crime is not enough if a defendant has not participated in furtherance of the enter-

prise. *Commonwealth* v. *Burke*, 20 Mass. App. Ct. 489, 505 (1985).

In this case, Wilson's handling of the cocaine and his exhibiting it to Trooper Brooks took him from a passive onlooker to someone whom the jury might find was a participant. Compare *Commonwealth* v. *Nelson*, 370 Mass. 192, 196 (1976); *Commonwealth* v. *Pratt*, 407 Mass. at 653-654; *Commonwealth* v. *Burke*, 20 Mass. App. Ct. at 505-507.

5. *Other issues.* We have considered the argument that Wilson is entitled to reversal because Trooper Brooks offered different accounts of his drug purchase at the time of the suppression hearing and then later at trial. The principal deviation is that at the time of the suppression hearing, Brooks did not mention Wigfall's apprehension about being "ripped off" and his desire, therefore, to do the deal in the apartment. There was a reason for this deviation; the subject of the suppression hearing was the first meeting between Brooks and Wigfall, and on that occasion the subject of where the deal was to "go down" never came up. Other than that, Wilson's suggestions to the contrary notwithstanding, the accounts given by Brooks are fundamentally consistent, certainly not so at variance as to place in question the integrity of the prosecution.

*Judgments affirmed.*