COMMONWEALTH *vs.* EDWARD MARTINEZ
(and three companion cases[1]).

No. 98-P-683.

Worcester. June 10, 1999. - September 29, 1999.

Present: ARMSTRONG, KASS, & PORADA, JJ.

*Search and Seizure,* Probable cause, Exigent circumstances. *Probable Cause. Controlled Substances. Practice, Criminal,* Required finding, Instructions to jury, Assistance of counsel. *Evidence,* Alibi, Consciousness of guilt, Prior inconsistent statement.

Exigent circumstances warranted police officers' forced entry and warrantless search of a motel room. [842-843]

Evidence at the trial of indictments, properly tried together, alleging violations, on two dates, of the controlled substances statute, pertained to related and sequential crimes and was sufficient to warrant the trier of fact reasonably to conclude that the defendants were guilty as charged. [843-844]

At the trial of indictments, there was no reversible error in the judge's instructions to the jury, and defense counsel was not shown to be ineffective for failing to have requested a certain instruction. [844-845]

INDICTMENTS found and returned in the Superior Court Department on August 11, 1995.

A pretrial motion to suppress evidence was heard by *Daniel F. Toomey,* J., and the cases were tried before *James F. McHugh, III,* J.

*Brian J. Buckley* for Edward Martinez.

*Wendy H. Sibbison* for Abimael Rios.

*Cathryn A. Neaves,* Assistant Attorney General, for the Commonwealth.

KASS, J. Of several indictments, the major ones of which the defendants Edward Martinez and Abimael Rios were convicted were trafficking in 200 grams or more of cocaine. There were

---

[1]One of the companion cases is against Edward Martinez; the other two are against Abimael Rios.

lesser convictions of each of the defendants for having on another day trafficked in more than fourteen grams of cocaine. The points on appeal may also be classified as major and minor. The first major issue is whether probable cause and exigent circumstances justified a State police raid, made without an arrest or search warrant. That raid led to the arrest of the defendants. The second major issue is whether the conduct of the defendants in a sale of cocaine to an undercover State trooper on August 1, 1995, could be used to buttress proof of a drug sale that had occurred nineteen days earlier, on July 12, 1995, and vice-versa. We shall identify the minor points as we discuss them later in this opinion.

1. *Facts.* Taking the evidence in the light most favorable to the prosecution, *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), the jury could have found as follows. On the pretense that he was a cocaine dealer from New Hampshire, Peter Cummings, a Massachusetts State police trooper, made and nursed an acquaintance with Walter Joseph Regnier. Cummings expressed interest in locating a fresh source of powder cocaine of high purity levels. Through Regnier's intervention, he met first with Sonia Alvarez and Reinaldo Gonzalez to whom, over the course of several encounters, he explained that he wanted to buy thirty-one grams. Also present at most of those encounters was Jeanette Pena. Among them, the parties scheduled a "buy" on July 12, 1995.

The defendants Martinez and Rios entered the picture on that date. Regnier had accompanied Cummings to 32 Green Street, Fitchburg, where they met Alvarez and Gonzalez in a second-floor apartment. The cocaine had not arrived. After some talk, Cummings said he felt unsafe, said he was leaving, and asked to be beeped on his pager when his order was ready. A few minutes later, a dark gray Buick automobile pulled up at 32 Green Street, observed by State troopers who had the building under surveillance. There were three men in the car: one was the driver, the defendant Rios; the other two were the defendant Martinez and Manuel Delosantos. The latter two entered 32 Green Street, while Rios stayed behind the wheel. Cummings came back on his own initiative after some time (he had not been beeped) and was told by Sonia Alvarez that everything was set, "the boys were here." Gonzalez retreated to a back bedroom and returned with the cocaine and quoted a price of $1,050. Cummings had only $900 and haggled over the price.

There was no give. The price, he was told, had been set by the boys' sister. He proposed buying twenty-nine grams instead for his $900. This was satisfactory, and Cummings measured out two grams into a glassine envelope and returned them to Gonzalez. Before Cummings left with his purchase, Sonia Alvarez quoted prices for 125 grams and 250 grams of cocaine. Back on the street, Cummings noticed the Buick parked on Green Street, with Rios at the wheel. Soon after, the surveillance team saw the two men who had arrived in the Buick, Martinez and Delosantos, emerge from 32 Green Street, get into the Buick and, with Rios driving, ride off.

Working with the same cast of characters, Cummings now arranged to buy 500 grams of cocaine on August 1, 1995. Again, a surveillance unit tailed him. By arrangement, he met Sonia Alvarez and Joe Regnier at Major's Bar in Fitchburg. They entered Cummings's car and proceeded to direct him to another location. He voiced his unease about not knowing where he was going. Alvarez assured him everything was all right. Their destination turned out to be a Super 8 Motel in Leominster. Cummings told Alvarez he wanted to leave his money, $12,000, in the trunk of his car. If the cocaine was satisfactory, he would give Alvarez the key so she could fetch the cash. Cummings was led to room 407 and inside met once again with Delosantos, Pena, and the defendants Martinez and Rios. Delosantos handed Cummings a large bag of cocaine. Cummings, apparently never without a scale, weighed it, satisfied himself that it contained 505 grams of cocaine, and gave Alvarez his trunk key. As she left the room, it did not escape her notice that in the stairwell that she had entered there was a foursome of State troopers, not in uniform but with badges hanging from their clothes, radios dangling, and weapons exposed. It was an awkward moment. As a first step, "[t]he female was secured in the stairwell." Then it was time for more action. The police announced themselves and heard "a lot of commotion inside." The team of troopers charged the door, but lacking a battering ram, it took some time — three to four minutes — for the officers to break in. In the meantime, the officers heard "a lot of yelling and screaming."[2]

On the inside, Cummings struggled to hang onto the cocaine. Martinez wrestled it away and tossed it toward Rios. As Cum-

---

[2]Asked how long it took to break the door down, one trooper testified, "It seemed like eternity." A motion to strike this colorful remark was allowed.

mings struggled with Martinez and Delosantos, Cummings heard a toilet flushing. When the outside squad of troopers finally broke in, they found only fourteen grams of cocaine, most of it on the floor where the bag had landed near Rios. Rios was spotted in or near the bathroom.

2. *Suppression motion.*[3] The Superior Court judge who heard the motion to suppress denied it on the ground that exigent circumstances justified the police officers' forced entry and search without a search warrant of room 407 of the Super 8 Motel. That the inhabitants of the motel room had a reasonable expectation of privacy in it is not in dispute. See *Commonwealth* v. *Hamilton*, 24 Mass. App. Ct. 290, 292 n.5 (1987); *Commonwealth* v. *Brown*, 32 Mass. App. Ct. 649, 651 (1992). Without a search warrant, the police lacked authority to make a nonconsensual entry "unless they had probable cause to make an arrest or to search for evidence and, in addition, there were exigent circumstances." *Commonwealth* v. *Lee*, 32 Mass. App. Ct. 85, 87 (1992). See *Payton* v. *New York*, 445 U.S. 573, 590 (1980); *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975). The government bears the burden of proving that the circumstances were sufficiently exigent to excuse the failure of the police to obtain a search warrant. *Commonwealth* v. *Lee*, *supra* at 87.

In this case, the police were not in a position to obtain a search warrant in advance. They did not know where the drug sale would take place. The surveillance squad followed their decoy, Trooper Cummings. When Cummings went into the Super 8 Motel, there was no time for the surveillance squad to detach one of their number to obtain a search warrant. The surveillance squad were fully informed that Cummings was on his way to make a controlled buy. Once the sale had been completed, it was safe to assume that the participants would disperse — and fast. For that reason, there were exigent circumstances warranting entry and arrests in room 407 even had everything gone as the police planned, i.e., the sale completed, Cummings with the drugs and the drug dealers with the $12,000 in cash. The surprise of the police by Alvarez (as

---

[3]Martinez and Rios, the defendants, were originally scheduled to go to trial with Delosantos and Pena. The trial judge severed the trial of Martinez and Rios from the other two. Charges were also brought against Alvarez, Gonzalez, Regnier and Ramona Martinez, but the record is silent (nor need it be otherwise) about the disposition of those charges.

one of the troopers testified, "[T]he door opened and there she was staring at all four of us") added to the exigency of the circumstances. The police were bound to arrest or she would raise the alarm. When she failed to return to room 407, the drug dealers would understand that she had fallen into the hands of the police, and Cummings would be in deadly peril. See *Commonwealth* v. *Curcio*, 26 Mass. App. Ct. 738, 746 (1989), a case with strikingly similar circumstances. There was every reason for the police to move in without a warrant, and the motion judge was right to deny the motion to suppress.

3. *Motions for required finding of not guilty.* As to the drug sale that occurred on July 12, 1995, the evidence against Rios, taken in isolation, may have been insufficient. Rios had been identified as the driver of the dark gray Buick that pulled up to 32 Green Street and disgorged Martinez and Delosantos. There was, however, no evidence that Rios knew what the mission of his passengers was. A finder of fact may "infer [a defendant's] requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). In the absence of evidence that Rios had knowledge of a proposed drug transaction, he could not be found guilty of trafficking on a joint venture theory, the only basis in which to involve him with the July 12 transaction. Of the three elements of joint venture participation, presence at the scene of the crime, knowledge that a crime is to be committed, and agreement to aid in bringing the crime to completion, the Commonwealth presented only evidence of peripheral presence. Were that all the evidence against Rios, it would not have been enough. *Commonwealth* v. *Lombard*, 419 Mass. 585, 588-589 (1995).

As to Martinez on July 12, it may be inferred that, as he arrived at 32 Green Street just before the sale to Trooper Cummings and left almost immediately after the sale, he had delivered the goods or played some other role essential to completion of the drug transaction.

What makes the case, as to July 12, sufficient to reach the jury against Rios and strengthens it against Martinez are the events of August 1. The presence again of Rios and Martinez with the same band of drug sellers and the same customer allows inferences of knowledge and intent to aid in committing the crime. In the light most favorable to the Commonwealth,

the evidence has Martinez struggling with Cummings for possession of the bag of cocaine and Rios engaged in the disposal of the bag's contents down the toilet. Their active participation in the August 1 transaction allows the inference that they were not on July 12 coincidental bystanders or hangers-on during step one of what was a two-step transaction. See *Commonwealth v. Wilson*, 38 Mass. App. Ct. 680, 687 (1995).

Both Rios and Martinez argue that the Commonwealth improperly bolstered the case against the defendants on July 12 with evidence of "other bad acts" on August 1, and, reciprocally, improperly shored up the August 1 evidence with the July 12 evidence. The flaw in the argument is that what the Commonwealth offered was not evidence of an unconnected criminal act, whether charged and tried or uncharged, introduced to demonstrate propensity. That, to be sure, would have been unlawful. *Commonwealth v. Helfant*, 398 Mass. 214, 224-225 (1986). *Commonwealth v. Hanlon*, 44 Mass. App. Ct. 810, 817-819 (1998). Rather, the evidence in each instance pertained to related crimes committed within the month, indictments for which were properly being tried together, for the very reason that the crimes were related and sequential. The Commonwealth was obliged, in order to meet its burden of proof, to adduce evidence as to each indictment. Inevitably, the jury would hear about the sale on July 12 and the aborted sale on August 1. That was damaging to the defendants but not unfairly so. Parenthetically, the defendants did not ask that the July 12 and August 1 indictments be tried separately nor ought a motion so to do have been allowed. See *Commonwealth v. Helfant, supra* at 231.

4. *Other matters.* (a) The trial judge instructed the jury that:

> "[I]n considering each of the indictments, you should consider all of the evidence introduced during the course of the trial and give to that evidence the weight, if any, you collectively deem appropriate."

The defendant Rios objects to that charge (it was a supplementary charge in response to a question from the jury). For the reasons discussed in connection with the previous point, the charge was correct.

(b) The alibi instruction was entirely satisfactory. It conformed to *Commonwealth v. McLeod*, 367 Mass. 500, 502 & n.1 (1975).

(c) Defense counsel at trial did not render ineffective assistance because he did not ask for a missing witness instruction as to Trooper Condon, a member of the surveillance squad that broke into room 407. The suggestion of counsel for Rios on appeal that Trooper Condon, who "secured" Rios in the bathroom of room 407, would have had something different to say about where Rios was than had been testified to by other troopers is unpersuasive. See *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986); *Commonwealth* v. *Wilson*, 38 Mass. App. Ct. at 685-686.

(d) The instruction on consciousness of guilt did not suggest the judge's view whether a defendant had manifested consciousness of guilt. The instruction was a proper explanation of the subject. Contrast *Commonwealth* v. *Brow*, 20 Mass. App. Ct. 375, 379 (1985).

(e) There was no error in the judge's instruction on prior inconsistent statements, which added — at the request of counsel for Martinez — an instruction that the failure to make a statement in circumstances in which it would be logical to make the statement may be considered an inconsistency.

*Judgments affirmed.*