COMMONWEALTH *vs.* VINCENT RICCI.

No. 01-P-1256.

Middlesex. November 14, 2002. - January 16, 2003.

Present: GREENBERG, DREBEN, & MASON, JJ.

*Electronic Surveillance. Search and Seizure,* Electronic surveillance, Probable cause, Exigent circumstances, Warrant, Affidavit. *Evidence,* Wiretap, Exculpatory, Verbal completeness. *Controlled Substances. Constitutional Law,* Search and seizure. *Practice, Criminal,* Reasonable doubt, Presumptions and burden of proof, Instructions to jury, Disclosure of evidence, Removal of case to Federal court.

A delay of three days by the Commonwealth in filing a return to a judge in accordance with the seven-day period provided by G. L. c. 272, § 99 M, did not require suppression of certain wiretap evidence, where the Commonwealth had acted in good faith and had not obtained any tactical advantage from the delay, and where there was no evidence that the wiretap tapes had been compromised. [161-163]

Certain orders of a judge authorizing wiretaps complied with G. L. c. 272, § 99 I, which did not require that a wiretap order contain the specific identities of all persons whose conversations might be intercepted pursuant to the order if those identities were unknown at the time the order was issued. [163]

In the circumstances, suppression of wiretap evidence was not required due to any failure by the executing officers to be aware of, and comply with, the need for minimization of the interception of nonpertinent conversations and the limits of the order allowing the wiretap. [163-165]

A criminal defendant was not entitled to suppression of wiretap evidence because of any improper use by a State trooper of information provided to him by an agent of the Federal Bureau of Investigation. [165]

A warrantless entry of the residence of a criminal defendant, even if unlawful, did not require suppression of the cocaine and other evidence discovered as a result of the subsequent valid search of the residence pursuant to the warrant obtained by a State trooper, where the trooper did not rely to any significant extent on information obtained as a result of the warrantless entry when he subsequently applied for the warrant to search the residence. [165-167]

At a criminal trial, the judge's failure to repeat his entire instructions to the jury after improperly instructing them to the extent that he placed the burden on the defendant to prove, by a preponderance of the evidence, his defense that he had been acting under the authority of the Federal Bureau of Investigation (FBI) at the time of the crime, did not create a substantial

156      57 Mass. App. Ct. 155 (2003)

Commonwealth v. Ricci.

risk of a miscarriage of justice (nor was it error), where the judge repeatedly and forcefully instructed the jury that, as with every other issue, the Commonwealth bore the burden of proving beyond a reasonable doubt that the defendant, in committing the crime, had not acted under the authority of the FBI, which was the only live issue raised by the defendant. [167-169]

At a criminal trial, the prosecutor fully complied with his disclosure obligations with regard to furnishing certain materials necessary for the defendant's defense, and did not engage in any misconduct warranting reversal of the defendant's conviction. [169-171]

Although a criminal defendant's petition pursuant to 28 U.S.C. § 1446 for removal of this case to the United States District Court for the District of Massachusetts was dismissed by a judge of that court, and his appeal from that dismissal was denied by the United States Court of Appeals for the First Circuit, the Superior Court plainly had jurisdiction to continue with its proceedings. [171]

A criminal defendant failed to show that any error, let alone an error giving rise to a substantial risk of a miscarriage of justice, occurred at all with regard to his being prohibited from introducing a certain statement that he alleged was necessary to complete a conversation to which a witness had testified, where, since testimony regarding the original conversation had been struck, there was no statement on this issue at all before the jury, much less one that needed to be completed. [171-172]

This court, after examining materials alleged by a criminal defendant to show that a State trooper had deliberately misstated certain facts that were set forth in an affidavit the trooper submitted in support of a wiretap warrant, concluded that the materials failed to raise any substantial issue whether the affidavit in question contained any deliberate falsehoods or statements constituting a reckless disregard of the truth; further, the material that the defendant sought to challenge was not necessary to a finding of probable cause sufficient to support issuance of the wiretap warrant. [172]

INDICTMENT found and returned in the Superior Court Department on November 15, 1995.

A pretrial motion to suppress evidence was heard by *Hiller B. Zobel*, J., and the case was tried before him.

*Paul J. Haley* for the defendant.

*Peter A. D'Angelo*, Assistant District Attorney (*Michael D. Friedland*, Assistant District Attorney, with him) for the Commonwealth.

MASON, J. After a jury trial in the Superior Court, the defendant was convicted of trafficking in cocaine in an amount of 200 grams or more. See G. L. c. 94C, § 32E(*b*)(4). On appeal, he claims that the judge erred in failing to grant his motion to suppress certain wiretap evidence and also cocaine and other evidence seized during a search of his residence pursuant

to a warrant. He also argues that certain of the judge's instructions impermissibly shifted the burden of proof with respect to a defense he had raised, that the Commonwealth failed to provide him with certain materials necessary to his defense, and that he should have been permitted to remove the case to Federal court. The defendant separately argues in his own pro se brief that he was improperly prohibited from introducing certain evidence that was necessary to complete a conversation to which a witness had testified, and that the Commonwealth used false information to procure the wiretap warrant. We affirm the conviction.

*Background.* The judge did not make extensive findings of fact in ruling on the defendant's various motions to suppress, which principally raised questions of law. We recite the relevant undisputed facts elicited at the suppression hearing.

On January 24, 1995, United States postal inspectors intercepted an express mail package having a Florida return address and containing four kilograms of cocaine. The package was addressed to an "Alice Roberts" at 101 Fulton Street in Medford, but the resident of that address refused to accept the package and disclaimed knowledge of any Alice Roberts. In response to a telephone request from some individual to the South Boston postal annex, the package was redelivered to the Fulton Street address. It was accepted by a male who identified himself as Emanuel Costa.

Richard Prior, a State police trooper assigned to the Middlesex County narcotics unit, arrested Costa and, after informing him of his Miranda rights, asked him to explain how he happened to receive the package. Costa stated that, since August, 1994, an individual named Henry Festa had been paying him to receive such packages at the Fulton Street address and also at another location.

Medford police officers promptly initiated a surveillance at Festa's residence at 70 Palmer Street in Medford. At about 5:30 P.M., they observed a male, later identified as the defendant, stop a Lincoln Town Car in front of that address. Festa entered the car, stayed for just two minutes, and then left the car. The defendant drove away, and the car was subsequently observed

parked in the driveway of the defendant's residence at 17 Short Street in Medford.

Trooper Prior decided to investigate both Festa and the defendant and, during his investigation, he was informed by a confidential reliable informant that the defendant was a major cocaine distributor who regularly sent his associates, including Festa and Costa, to Florida to arrange for cocaine to be sent back to Boston. Trooper Prior also found papers that were consistent with drug distribution records in the defendant's trash at his residence in Medford. An analysis of telephone billing records revealed that numerous telephone calls had been made from the defendant's residence to Florida, and that some of these calls had been made to the hotel at which Festa and Costa were staying in Florida.

Subsequently, on July 19, 1995, two Middlesex County assistant district attorneys, acting in reliance on a lengthy affidavit prepared by Trooper Prior detailing the results of his investigation, applied for and obtained a wiretap warrant from a Superior Court judge. That warrant only authorized the executing officers to keep track of the times, dates, and telephone numbers associated with incoming and outgoing calls of the home telephones of the defendant and Festa. Then the police learned that the defendant was also communicating with one Christopher Brunco, an individual whom State police officers at Logan Airport previously had stopped and questioned in connection with a suspicious round trip Brunco had made to Florida under an assumed name. The assistant district attorneys who had applied for the earlier wiretap warrant obtained, on September 8, 1995, from the same Superior Court judge, a warrant authorizing police investigators to use listening devices not only to track the calls involving the defendant's telephone, but also to listen to and record all such calls dealing with drug distribution. Thereafter, over the next several days, police investigators intercepted numerous calls indicating that Brunco had traveled to Florida and back to obtain a shipment of cocaine for the defendant, and that the shipment would be arriving in Boston on Thursday, September 14, 1995.

On the morning of Thursday, September 14, 1995, postal inspectors intercepted an express mail package, bearing a

Florida return address, that an X-ray indicated was consistent with containing bricks of cocaine. The package was delivered to an address in Chelsea where it was accepted by a male who was known by the police to be associated with the defendant. On the same date, at 8:22 P.M., Brunco called the defendant at his home and, during the course of the conversation, asked, "What about the whatamacallit . . . the ice cream?" The defendant responded, "Yeah, that's no problem." Brunco then asked, "What time," and the defendant responded, "Whenever you want it." Brunco then stated that he would stop by the defendant's home.

At this time, State police Trooper Robert McCarthy was conducting a surveillance of the defendant's home, and observed a number of cars coming to and going from the home. At about 8:45 P.M., he saw Brunco enter the defendant's home carrying an object.

Believing that cocaine had just been delivered to the defendant's home, and that there were a number of persons inside, the police determined that they should secure the home. Trooper Prior accordingly knocked on the front door of the defendant's residence and announced, "State police, open up." About a minute later, Trooper Stephen Matthews observed the defendant open a second-floor window and attempt to toss out a paper bag. Trooper Matthews yelled up at the defendant, "State police," and the defendant responded, "Fuck you." At this point, Medford police Sergeant James Grubb broke through the back door of the house with a battering ram.

About the same time, Brunco opened the front door and allowed Trooper Prior and several other officers to enter. Both the defendant and Brunco were arrested. The police found a handgun on the defendant. They also seized a paper bag in the upstairs room that the defendant had occupied when he was observed by Trooper Matthews.

Thereafter, Trooper Prior obtained a search warrant. The police conducted a search of the defendant's home pursuant to the warrant and discovered that the bag they had secured contained 496 grams of cocaine. They also discovered a scale, drug distribution records, plastic baggies, a large amount of cash and, floating in the defendant's toilet, a plastic bag.

At trial, Troopers Prior and Matthews, and also several of the other officers who had participated in the search of the defendant's home, testified to the foregoing events. The Commonwealth also called Henry Festa, Emanuel Costa, and Christopher Brunco as witnesses for the Commonwealth. Each of these persons testified that they had regularly received and distributed packages of cocaine for the defendant or his associates.

Testifying in his defense, the defendant did not deny that he had possessed cocaine on the day of the raid, but said that he had done so only because he was then working on an undercover basis with two agents assigned to the Boston office of the Federal Bureau of Investigation (FBI) to investigate and apprehend a major drug dealer in the Medford area. Allegedly, he had met with the agents just hours before the raid, and they had instructed him to begin buying a large amount of cocaine from the dealer, which he had in fact done immediately after the meeting. The defendant further testified that he had been engaging in similar activities with the FBI since 1992, and that both FBI agents knew that he was dealing in drugs in connection with these activities and had authorized him to do so.

In addition to presenting his own testimony, the defendant called the two FBI agents as witnesses for the defense. One testified that the defendant had in fact served as a confidential informant for the FBI since 1992, but that he had never authorized the defendant to deal in drugs, or otherwise violate the law, and did not know that he was doing so. The other agent similarly testified that he had never authorized the defendant to deal in drugs or otherwise violate the law.

The defendant also called Trooper Prior as a witness for the defense. Trooper Prior testified that he had met with one of the FBI agents called by the defense some time in February 1995, and had discussed with him the investigation Trooper Prior was conducting into the activities of Festa and the defendant, but that he had initiated the meeting only in response to information he had received that Festa (not the defendant) might be an informant for the FBI. Trooper Prior further testified that the agent had told him at that time only that the agent had never heard of Festa and that, while the defendant had been intercepted

on a wiretap the FBI had been conducting of another individual, nothing on the wiretap was criminal and the FBI had nothing important to disclose about the defendant.

1. *Wiretap evidence.* The defendant claims that the wiretap evidence should have been suppressed because the Commonwealth failed to comply with the requirement set forth in G. L. c. 272, § 99 M, that a return be filed with the judge issuing the wiretap warrant within seven days after termination of the warrant. The defendant also complains that the judge's orders authorizing the wiretaps failed to identify particularly all persons whose conversations could be intercepted and also failed to include sufficient instructions to the executing officers so as to minimize the interception of nonpertinent conversations. The defendant finally contends that, in his affidavits supporting the wiretap applications, Trooper Prior relied on information provided to him by the FBI agent and described as criminal activities on the part of the defendant that had been authorized by the FBI. We address each of these contentions in the order they have been presented.

(a) *Timely return.* General Laws c. 272, § 99 M, requires that a return must be made to a judge issuing a wiretap warrant "[w]ithin seven days after termination of the warrant or the last renewal thereof."[1] Under this provision, a return is to be made "as soon as practicable" after the termination of a warrant, and in no event more than seven days after the termination of the

---

[1]General Laws c. 272, § 99 M, as amended by St. 1968, c. 738, § 1, provides in its entirety that: "Within seven days after termination of the warrant or the last renewal thereof, a return must be made thereon to the judge issuing the warrant by the applicant therefor, containing the following:

"a. a statement of the nature and location of the communications facilities, if any, and premise or places where the interceptions were made; and

"b. the periods of time during which such interceptions were made; and

"c. the names of the parties to the communications intercepted if known; and

"d. the original recording of the oral or wire communications intercepted, if any; and

"e. a statement attested under the pains and penalties of perjury by each person who heard oral or wire communications as a result of the interception authorized by the warrant, which were not recorded, stating everything that was overheard to the best of his recollection at the time of the execution of the statement."

warrant. *Commonwealth* v. *Westerman,* 414 Mass. 688, 698-699 (1993), citing *Commonwealth* v. *Vitello,* 367 Mass. 224, 267 (1975).

The Commonwealth concedes that it failed to comply with this provision. The September 8, 1995, wiretap order authorized interceptions only for a period of fifteen days and, hence, the warrant terminated by its terms on September 22, 1995. Nevertheless, no return was filed with the judge until Monday, October 2, 1995, which was ten days after September 22.

An assistant district attorney testified at the suppression hearing that the assistant responsible for filing the return misunderstood the order to mean that the warrant would not "terminate" for purposes of the statutory seven-day period until October 7, 1995, rather than September 22, 1995,[2] that this mistake was not discovered until Friday, September 29, 1995, and that the assistant thereafter filed the return as soon as he possibly could, on Monday, October 2, 1995. After hearing this and other testimony, the motion judge specifically found that there was no credible evidence of any tampering with the tapes, that any delay in the filing and sealing requirement was "de minimis," and the defendant's constitutional rights were not infringed. On appeal, the defendant does not challenge these findings but claims that suppression of all of the wiretap evidence was automatically required because of the Commonwealth's failure to comply with the statutory seven-day period. The statute, however, has not been construed so stringently. A slight delay in complying with the seven-day period will not require the suppression of wiretap evidence where, as here, the Commonwealth has acted in good faith and has not obtained any tactical advantage from the delay, and where there is no evidence that the tapes have been compromised. See *Commonwealth* v. *Vitello, supra* at 275-276 (suppression of wiretap evidence was not required where return was filed only two days beyond period prescribed by statute and defendants failed to show that they

[2]The wiretap order issued on September 8, 1995, provided that "[t]he termination date of this Order shall be no later than thirty (30) days from the date of effect of this Order," but also that the "interceptions shall be authorized for a period not exceeding fifteen (15) days from the date of the first interception." The date of first interception was September 8, 1995.

were prejudiced by delay). See also *Commonwealth* v. *D'Amour*, 428 Mass. 725, 738-741 (1999). The short three-day delay by the Commonwealth in filing the return did not require suppression of the wiretap evidence.

(b) *Particularity.* Citing *Berger* v. *New York*, 388 U.S. 41 (1967), the defendant claims that the orders issued did not, as required, closely constrain the use of electronic surveillance, as they failed to identify particularly all persons whose conversations could be intercepted. The September 8, 1995, order, the only order permitting the police to monitor or record any conversations, provided that the authorization was limited to "those communications of Vincent Ricci, Henry 'Rico' Festa and their associates, agents and co-conspirators, some of whom have yet to be identified, which relate to the possession and/or distribution of cocaine, or conspiracy to commit the same." The defendant makes no coherent argument that this narrowly tailored authorization failed to comply with any statutory or constitutional requirement.

In fact, the relevant language of G. L. c. 272, § 99 I, as amended by St. 1968, c. 738, § 1, provides only that a wiretap order must contain "[a] particular description of the person and the place, premises or telephone or telegraph line upon which the interception may be conducted," and also "[a] particular description of the nature of the oral or wire communications to be obtained by the interception including a statement of the designated offense to which they relate." It does not require that the order contain the specific identities of all persons whose conversations might be intercepted pursuant to the order if those identities are unknown at the time the order is issued. The order issued in this case complied with the statutory requirements. Compare *United States* v. *Kahn*, 415 U.S. 143, 152 (1974) (order issued under Federal wiretap statute need not specify identities of all persons whose conversations might be intercepted pursuant to order).

(c) *Minimization instructions.* Federal law requires that a wiretap order provide that the interception shall "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." 18 U.S.C. § 2518(5). While the State statute has no express

equivalent, the Supreme Judicial Court has held that every order issued under the statute "must fully ensure that the surveillance is limited to proper objectives, and protective of rights of privacy." *Commonwealth* v. *Vitello*, 367 Mass. at 266. Moreover, "the directive of the order and the instructions given therewith should be clear and unambiguous so that the executing officers are aware of and abide by the limitations of the order." *Ibid.*

The defendant claims that the September 8, 1995, wiretap order failed to comply with these requirements because it failed to include any detailed minimization instructions. In fact, the affidavit of Trooper Prior submitted in support of the warrant application attached a nine-page memorandum, entitled "Monitoring Instructions for a Warrant Issued on September 8, 1995," from the Middlesex district attorney that specified numerous procedures and safeguards to ensure the interception of nonpertinent calls was minimized.[3] In addition, the monitoring instructions directed that each executing officer must read the warrant and sign an affidavit indicating that he or she had read the instruction memorandum and would "abide by its terms and minimize the interception of the conversations to the best of his/her ability." The wiretap order subsequently issued by the judge referred specifically to these monitoring instructions and ordered the officers executing the warrant to "show due regard for the right of privacy," and to comply with the instructions.

The defendant has not claimed that the instructions were in any specific sense inadequate. Nor has he claimed that minimization was not actually achieved by the officers executing the warrant in this case. In fact, the Commonwealth has pointed out that the judge reviewed approximately 617 telephone calls recorded pursuant to the warrant and suppressed only four of them for noncompliance with the minimization requirement. In these circumstances, suppression of the remaining wiretap evidence was plainly not required due to any failure by the

---

[3]For example, the instructions directed that, if neither the defendant nor Festa were a party to an intercepted call, then the intercepting officer should monitor no more than the first ninety seconds of the call to determine if it was a "pertinent conversation," and, if it was not, then the officer should only "spot monitor" the call after an additional thirty seconds to determine whether it had become a "pertinent conversation."

executing officers to be aware of, and comply with, the need for minimization and the limits of the wiretap order. See *Commonwealth* v. *Vitello, supra* at 264-265. See also *United States* v. *Hoffman*, 832 F.2d 1299, 1307-1309 (1st Cir. 1987).

(d) *Reliance on authorized activities.* The defendant finally claims that the wiretap evidence should have been suppressed because, in his affidavit submitted in support of the first warrant application, Trooper Prior used information provided by the FBI and relied on criminal activities of the defendant that had been authorized by the FBI. The defendant did not even raise this claim until one of the FBI agents he had called as a witness testified at trial. The judge at that time interrupted the trial and held a full hearing into the claim. At the conclusion of the hearing, the judge found as follows:

> "I find beyond a reasonable doubt that the, whatever information [the FBI agent] provided to then Trooper Prior, was not information that formed any substantial basis, or indeed any basis at all for the affidavit and the subsequent authorizations that flowed from the affidavit."

This finding was fully supported by the testimony of Trooper Prior, which we have previously described. Indeed, the defendant does not even claim to the contrary. The defendant therefore was not entitled to suppression of the wiretap evidence because of any improper use by Trooper Prior of information provided by the FBI.

2. *Failure to suppress cocaine and other evidence seized from the defendant's residence.* In denying the defendant's motion to suppress the cocaine and other evidence seized from his residence during the search conducted pursuant to the warrant obtained by Trooper Prior, the judge found that both probable cause and exigent circumstances existed to justify the prior warrantless entry of the home. The judge relied particularly on the fact that, prior to their entry, the police had observed the defendant attempting to throw a bag from the upstairs window. See *Commonwealth* v. *Amaral*, 16 Mass. App. Ct. 230, 233 (1983).

The defendant does not dispute that exigent circumstances existed as soon as the police observed him attempting to dispose

of the bag from the upstairs window. Nevertheless, the defendant claims that the police themselves deliberately manufactured these exigent circumstances first by failing to obtain a warrant before Brunco had arrived at the defendant's residence and then by knocking on the defendant's door and announcing their presence as soon as Brunco had arrived at the residence. The defendant claims, therefore, that the entry was unlawful and the evidence obtained during the subsequent search of the defendant's home should have been suppressed under the fruit of the poisonous tree doctrine. See *Wong Sun* v. *United States*, 371 U.S. 471, 487-488 (1963).

The defendant's argument overlooks the fact that there was no evidence presented at the suppression hearing that the police actually knew, or had reason to believe, that Brunco or anyone else would be delivering the cocaine to the defendant at his residence (as distinct from a public restaurant or some other location) until they intercepted Brunco's call to the defendant at 8:22 P.M. on the evening in question and then, just a few minutes later, actually saw him arrive at the defendant's residence carrying a package. On the other hand, there was substantial evidence presented at the suppression hearing that, when the police did see Brunco arrive at the defendant's home carrying an object, they reasonably believed that the defendant and several other persons were present in the home and that some or all of them might quickly disperse as soon as it had been delivered. See *Commonwealth* v. *Martinez*, 47 Mass. App. Ct. 839, 842 (1999). Contrast *Commonwealth* v. *Huffman*, 385 Mass. 122, 125 (1982); *Commonwealth* v. *DeJesus*, 56 Mass. App. Ct. 523, 532-534 (2002).

However, we need not decide whether the police acted unlawfully in initially entering the defendant's residence without a warrant because Trooper Prior did not rely to any significant extent on information the police obtained as a result of that entry when he subsequently applied for the warrant to search the residence. Rather, he submitted a fifty-five page affidavit in which he set forth in detail each of the defendant's prior telephone calls with Brunco and others with respect to the cocaine coming from Florida, and also described each of the events occurring on September 14, 1995, up to and including

Brunco's arrival at the defendant's house. While Trooper Prior also included in his affidavit certain statements Brunco had made following his arrest, to the effect that Brunco had been working for the defendant in obtaining and delivering the cocaine, this merely confirmed what the rest of the affidavit had already established. These statements did not add any new facts and, if they were entirely excised, the remaining portions of the affidavit would be sufficient to show probable cause for a search of the defendant's home. See *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982); *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983).

We therefore conclude that the warrantless entry of the defendant's residence, even if unlawful, did not require a suppression of the cocaine and other evidence discovered as a result of the subsequent valid search of the residence pursuant to the warrant obtained by Trooper Prior.[4] See *Commonwealth* v. *Hall*, 366 Mass. 790, 795-798 (1975); *Commonwealth* v. *Singer*, 29 Mass. App. Ct. 708, 714 (1991). See also *Commonwealth* v. *Cast*, 407 Mass. 891, 897 (1990) (provided that basis for affirmance is supported by record and findings, appellate court may affirm on grounds not relied on by motion judge).

3. *Improper burden-shifting.* The judge instructed the jury during his main charge that the Commonwealth was required to prove each element of the crime of trafficking in cocaine beyond a reasonable doubt, a standard which he explained for the jury. He then stated, however, that the defendant had raised the defense that he was acting under the authority of the FBI and that "[t]his is the one phase of the case where the defendant has to prove something." The judge then stated that "[h]e does not have to prove it beyond a reasonable doubt," but "[h]e has to prove that it's more likely true than not that what he says is so." The judge further stated that:

---

[4]We reject the defendant's contention that the cocaine should have been suppressed in any event merely because the police would not have secured and subsequently searched the bag containing the cocaine unless they had first seen the defendant attempt to throw such a bag from the upstairs window of his house. Having intercepted Brunco's call to the defendant and then observed him entering the defendant's house with an object in his hand, the police obviously would have seized and searched the bag pursuant to the warrant even if they had not seen the defendant attempt to throw such a bag from the upstairs window.

"If the government fails to prove any element of its case beyond a reasonable doubt, then you must return a verdict of not guilty. If the government proves all elements, beyond a reasonable doubt, but the defendant proves by a preponderance of the evidence, more likely true than not, that he was acting under authority, then you must return a verdict of not guilty. If the defendant — if the government proves its case, beyond a reasonable doubt, and the defendant fails to persuade you that, it's more likely true than not, that he was acting under authority, then you may return a verdict of guilty."

The defendant did not object to these instructions. The prosecutor, however, did object and informed the judge both immediately after the charge had been given and also immediately after the jury had begun their deliberations that he believed the instructions were improper to the extent they placed a burden on the defendant to prove his defense of authority by a preponderance of the evidence.[5]

After hearing arguments from counsel, the judge recalled the jury and told them that he had misspoken with respect to the question of authority and wanted to "correct" his instructions with respect to that point. The judge then told the jury that the defendant did not have the burden of persuading the jury on the question of authority, but rather the Commonwealth had the burden. More specifically the judge stated:

"I suggested that the defendant had a burden of persuading you. In that, I believe now, I was incorrect. The defendant does not have the burden of persuading you. The government has the burden of persuading you, on the basis of the evidence, that the defendant either did not have authority, or that he reasonably, or that he did not reasonably rely on the authority."

The judge further instructed the jury that:

---

[5]We reject the defendant's contention, raised in his separate pro se brief, that because defense counsel did not object to the judge's instructions, the prosecutor had no power or authority to do so on his own. It cannot be overemphasized that we frequently have urged prosecutors to bring to the attention of the judge any possible error in the judge's instructions that might cause prejudice to the defendant.

"[I]t is the government's burden to persuade you, beyond a reasonable doubt, that [the defendant] did not reasonably rely on the, whatever the government told him. That is to say, that he was not reasonable in acting as though he believed that the government was authorizing him to commit the acts which he then committed."

The judge repeated these corrected instructions the next day when the jury specifically requested that he repeat his "amended information." In response to this request, the judge again told the jury that it was "the government's burden to prove, beyond a reasonable doubt, not only that [the defendant] was trafficking in cocaine, as I described it to you and explained it to you, but that he was not doing it with the authorization of the authorities, the FBI."

The defendant does not substantively challenge the corrected instructions[6] but claims that, in giving them, the judge should have repeated his entire instructions and told the jury to begin their deliberations all over again. In fact, it appears from the record that the jury had only just begun their deliberations at the time the judge corrected his instructions. Moreover, we can discern from the record no purpose, and the defendant has not suggested any, that would have been served by the judge repeating his entire instructions. While the judge initially misspoke, he repeatedly and forcefully instructed the jury that, as with every other issue, the Commonwealth bore the burden of proving beyond a reasonable doubt that the defendant, in trafficking in cocaine, had not acted under the authority of the FBI, which was the only live issue raised by the defendant. In these circumstances, the judge's failure to repeat his entire instructions not only did not create a substantial risk of a miscarriage of justice, but was not error. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Johnson*, 429 Mass. 745, 754 n.7 (1999).

4. *Failure to furnish exculpatory evidence.* Prior to trial, the defendant requested that the judge sign a request to the FBI that it furnish copies of any reports it had pertaining to the defendant's activities as an informant, and that the prosecutor submit this request to the FBI. Both the judge and the prosecu-

---

[6]We express no view on this issue because it was not argued by the parties.

tor agreed to take these actions, even though the defendant refused to furnish any authorization for the release of such reports. Subsequently, when the FBI declined to furnish any documents in response to the judge's request, the defendant himself submitted a request for the documents pursuant to the Federal Freedom of Information Act, 5 U.S.C. § 552, and regulations promulgated thereunder. In response to this request, the FBI furnished to the defendant numerous documents, portions of which were redacted.

The defendant made no attempt to obtain a court order directing the prosecutor to take any further action. Rather, he introduced several of the redacted documents at trial and then argued to the jury that the redactions themselves showed that there was reasonable doubt in the case. More specifically, the defendant argued:

> "I suggest to you that there is a lot of reasonable doubt in this case. I suggest to you that the over 125 pages that I've introduced to you as FBI documents with all the black marks, every one of those black marks, is reasonable doubt. Every one of those black marks is something I can't stand here and argue[] to you. The only one to tell you what it meant, and what it was, and what was going on was Vincent Ricci . . . . And he told you, 'I'm not guilty.' "

Notwithstanding his affirmative use of the redactions in the foregoing manner, the defendant claims for the first time on appeal that he is entitled to a reversal of his conviction because the "Federal Bureau of Investigation essentially made a mockery of the discovery process" and the Commonwealth failed to prevent this from happening. We disagree. First, the defendant has made no showing that the prosecutor could have obtained unredacted documents from the FBI, or that he even alerted the prosecutor that he wanted him to do so. Nor has the defendant made any showing, or even specific speculation, that the redactions actually denied him information that was critical to his defense. See *Commonwealth* v. *Tucceri*, 412 Mass. 401, 405 (1992); *Commonwealth* v. *Vaughn*, 32 Mass. App. Ct. 435, 439 (1992). In these circumstances, we conclude that the prosecutor fully complied with his disclosure obligations and did not engage in any misconduct warranting reversal of the

defendant's conviction. See *Commonwealth* v. *Liebman,* 379 Mass. 671, 675 (1980); *Commonwealth* v. *Donahue,* 396 Mass. 590, 596-601 (1986).

5. *Removal to Federal court.* The defendant claims that, because he raised a colorable defense that he was acting under the authority of the FBI, he had a right to have the case removed to the United States District Court for the District of Massachusetts, but he was improperly denied the ability to exercise that right. More specifically, the defendant claims that he filed a petition pursuant to 28 U.S.C. § 1446 for removal of the case to the United States District Court for the District of Massachusetts, but a judge of that court wrongfully dismissed the petition and the United States Court of Appeals for the First Circuit denied his appeal from that dismissal.

It does not appear from the record why the defendant's removal petition was dismissed. Nevertheless, in light of the dismissal, the Superior Court plainly had jurisdiction to continue with its proceedings. The Federal removal statute provides in pertinent part only that a criminal prosecution commenced in a State court "may be" removed to an appropriate Federal District Court in circumstances specified by the statute. See 28 U.S.C. § 1442(a). It does not provide that a State court somehow loses jurisdiction over a case that has not been removed to a Federal District Court pursuant to the statute. See, e.g., *Babbitt* v. *Clark,* 103 U.S. 606, 612-613 (1880).

6. *Denial of verbal completeness.* During his cross-examination of one of the FBI agents, the prosecutor asked whether the agent had received information from any person other than the defendant that the defendant had disclosed to that other person that the defendant was working for the FBI. The agent responded affirmatively, but then indicated that he could not describe all of the circumstances of his receiving this information due to constraints that had been put on his testimony by the United States Attorney General.

At this point, counsel for the defendant objected and argued to the judge that if the agent was unable to disclose all the circumstances of his receiving information about the defendant's asserting that he was working for the FBI, then the agent should not be permitted to testify about the matter at all because it was

hearsay. The judge agreed with this objection and therefore excluded the testimony and instructed the jury to disregard "what the witness said somebody else told him about what the defendant was doing."

Based on the foregoing events, the defendant claims for the first time on appeal that he was improperly denied the right to submit evidence to which he was entitled under the doctrine of verbal completeness. See *Commonwealth* v. *Owens*, 402 Mass. 639, 641 n.2 (1988). The doctrine of verbal completeness was inapplicable because the original statement was struck. There was no statement at all before the jury, much less one that needed to be completed. The defendant therefore has failed to show that any error occurred at all, let alone an error giving rise to a substantial risk of a miscarriage of justice.

7. *False affidavit*. The defendant finally claims that various materials attached to his separate brief show that Trooper Prior deliberately misstated certain of the facts that were set forth in the lengthy affidavit he submitted in support of the application for the initial wiretap warrant, which was issued on July 19, 1995. We have examined these materials and conclude that they fail to raise any substantial issue as to whether the affidavit in question contained any deliberate falsehoods or statements constituting a reckless disregard of the truth. We further conclude that, in any event, the material that the defendant purports to challenge was not necessary to a finding of probable cause sufficient to support issuance of the wiretap warrant. See *Commonwealth* v. *Alcantara*, 53 Mass. App. Ct. 591, 594-596 (2002), and cases cited. The defendant is essentially quarreling with minor portions of the affidavit, which on the whole set forth overwhelming evidence that the defendant was trafficking in cocaine.

*Judgment affirmed.*